## FULL–SIGHT CONTACT LENS CORP., Plaintiff,

v.

## SOFT LENSES, INC., Defendant.

No. 78 Civ. 838.

United States District Court,
S. D. New York.

Dec. 5, 1978.

Milton S. Gould, Robert J. Hawley, Shea, Gould, Climenko & Casey, New York City, for plaintiff.

Warshavsky & Hoffman, New York City, Segal & Klar, P. C., Los Angeles, Cal., for defendant.

## OPINION AND ORDER

PIERCE, District Judge.

Full-Sight Contact Lens Corp. ("Full-Sight"), plaintiff in this action, is a distributor of soft contact lenses in New York, New Jersey, Connecticut and Rhode Island. Full-Sight is a New York corporation with its principal office in Mount Vernon, New York. Defendant, Soft Lenses, Inc., manufactures, distributes and sells soft contact lenses under the trademark "Hydro Curve" throughout the United States. Soft Lenses is a California corporation with its principal place of business in San Diego, California.

Pursuant to a non-exclusive distributorship agreement, defendant has supplied Hydro Curve lenses to plaintiff since February 1977. Full-Sight claims that, subsequent to the agreement, Soft Lenses discriminated against plaintiff in price and in the furnishing of services and facilities. The complaint also alleges that the defendant has tortiously interfered with plaintiff's business relations with its customers by making false statements concerning plaintiff's credit and financial stability. Full-Sight contends that as a result defendant has violated the Robinson Patman Act, 15 U.S.C. § 13 (1976), and section 2 of the Sherman Act, 15 U.S.C. § 2 (1976). As its third claim, Full-Sight alleges that defendant improperly failed to exchange or to credit plaintiff for the return of approximately 10,000 lenses purchased by plaintiff from defendant pursuant to the distributorship agreement.[1]

Defendant moves pursuant to Fed.R. Civ.P. 12(b)(3) and 28 U.S.C. § 1406(a) for an order dismissing this action for improper venue. In the alternative, defendant moves for an order pursuant to 28 U.S.C. § 1404(a) transferring this action to the United States District Court for the Central District of California.

Section 1406(a) provides:

"The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

Section 1406(a) suggests that the statute may be invoked only when venue is improper. See *Corke v. Sameiet M.S. Song of Norway*, 572 F.2d 77, 79 (2d Cir. 1978). If the Court were to look only to section 12 of the Clayton Act, 15 U.S.C. § 22 (1976),[2] venue here in this action would be entirely proper. The agreement provides that "all disputes arising hereunder . . . and any suit brought by Distributor [Full-Sight] shall be brought in either San Diego or Los Angles County."[3] Such venue selection

---

1. Paragraphs 17 and 18 of the Complaint read:

   "Since approximately September of 1977, plaintiff has returned to defendant for exchange or credit approximately 10,000 Hydro Curve soft contact lenses because said lenses were either defective or obsolete or had been returned to plaintiff under the terms of defendant's warranty. Plaintiff had purchased and received said lenses from defendant at a cost of approximately $272,000.

   "As a result of the foregoing plaintiff has been damaged in the amount of $272,000."

2. 15 U.S.C. § 22 (1976) provides:

   "Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found."

3. Paragraph 14 of the distributorship agreement provides in pertinent part:

   "This agreement shall be interpreted in accordance with, and shall be governed by, the laws of the State of California. All disputes arising hereunder shall be subject to the jurisdiction of the State of California and venue for any such litigation shall be proper in the

clauses have been found to be pertinent to a motion to dismiss under 1406(a). See *Jack Winter, Inc. v. Koratron Co.,* 326 F.Supp. 121 (N.D.Cal.1971); *A. C. Miller Concrete Products Corp. v. Quikset Vault Sales Corp.,* 309 F.Supp. 1094 (E.D.Pa.1970). The Court finds this agreement between the parties to be enforceable, thus making venue in the Southern District of New York improper.

Plaintiff contends that enforcing this venue selection clause contravenes Congress' intended policies under the Clayton Act. However, plaintiff has not cited any case law declaring venue selection clauses to be repugnant to the Clayton Act or any of the antitrust laws. The provisions for venue under the Clayton Act were "designed to aid plaintiffs by giving them a wider choice of venues, and thereby to secure a more effective, because more convenient, enforcement of antitrust prohibitions." *United States v. National City Lines,* 334 U.S. 573, 586, 68 S.Ct. 1169, 1176, 92 L.Ed. 1584 (1948). However, a plaintiff may relinquish such convenience. The Court finds that the venue selection clause in this case represents such a choice by the plaintiff and does not infringe upon the effective enforcement of the antitrust laws.

In this case, it appears the parties agreed in advance where venue would be proper. The United States Supreme Court has stated that the "correct approach" is to enforce venue selection provisions unless the party seeking to avoid enforcement can "clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." *The Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 15, 92 S.Ct. 1907, 1916, 32 L.Ed.2d 513 (1972). Plaintiff in this action does not claim any contract invalidity. As to the first prong of the test—the question of reasonableness—the Supreme Court also declared that "it should be incumbent on the party seeking to escape his contract to show that trial in the contractual forum will be so gravely difficult

and inconvenient that he will for all practical purposes be deprived of his day in court." *Id.* at 18, 92 S.Ct. at 1917.

The plaintiff has not shown any grave inconveniences which might result from a trial in California other than the inconvenience of travelling there. Such a trip apparently was contemplated by the parties when they entered into the agreement. Moreover, "[m]ere inconvenience or additional expense is not the test of unreasonableness since it may be assumed that the plaintiff received under the contract consideration for these things." *Central Contracting Co. v. Maryland Casualty Co.,* 367 F.2d 341, 344 (3d Cir. 1966).

Plaintiff does claim that the major witnesses in this case live in the New York area and would be inconvenienced by a trial in California. The location of the parties and witnesses has been used as a factor in determining the reasonableness of forum selection clauses. *Furbee v. Vantage Press, Inc.,* 150 U.S.App.D.C. 326, 328, 464 F.2d 835, 837 (1972). However, defendant also claims that it has several major witnesses who reside in California where many of the documents necessary for litigation are also located. In light of these claims, the Court does not find any of the alleged inconveniences to plaintiff's witnesses to be sufficient to overcome the venue selection clause.

In addition to inconvenience, courts have looked at other factors such as inequality of bargaining power, public policy, injustice, availability of remedies in the chosen forum, governing law, and conduct of the parties. See *Gaskin v. Stumm Handel GmbH,* 390 F.Supp. 361, 365 (S.D.N.Y.1975). The Court does not find that any of these factors weigh in favor of not enforcing the forum selection clause here. The Court does not doubt that the same remedies are available in California nor that the same law would apply, whether it be federal antitrust law or California law as agreed to in the contract. Neither does the Court per-

---

courts of either San Diego or Los Angeles County, and any suit brought by Distributor

shall be brought in either San Diego or Los Angeles County."

ceive that enforcement of the clause contravenes any strong public policy of this forum.

Finally, plaintiff contends that the venue selection clause is not applicable here because the present claim does not arise under the distributorship agreement. While the plaintiff's claim may not have arisen under the agreement, the Court considers the language in the agreement regarding "any action brought by Distributor" to include actions by plaintiff under the antitrust laws. Cf. *Cruise v. Castleton, Inc.,* 449 F.Supp. 564 (S.D.N.Y.1978) (Forum selection provision in Association's by-laws held to encompass any suits by a member against the Association.).

Accordingly, since the Court considers the venue selection clause reasonable under the circumstances the Court could dismiss this action. See *Republic International Corp. v. Amco Engineers, Inc.,* 516 F.2d 161 (9th Cir. 1975); *Sanko Steamship Co. v. Newfoundland Refining Co.,* 411 F.Supp. 285 (S.D.N.Y.), aff'd, 538 F.2d 313 (2d Cir.), cert. denied, 429 U.S. 858, 97 S.Ct. 158, 50 L.Ed.2d 136 (1976). However, in the interest of saving the plaintiff the effort and expense of bringing a new action in California, this Court, pursuant to 28 U.S.C. § 1406(a), transfers this action to the United States District Court for the Central District of California, a district where the action might have been brought.

■ The Court notes that the same result would follow under a motion to transfer pursuant to 28 U.S.C. § 1404(a).[4] In the determination of a § 1404 motion, a forum selection clause is merely one of many factors to be considered by a court. *Plum Tree, Inc. v. Stockment,* 488 F.2d 754, 757–58 (3d Cir. 1973). Only one factor—the convenience of the parties—is properly within the power of the parties themselves to affect by a forum selection clause. The other factors—the convenience of witnesses and the interest of justice—are the third party or public interests that must be

weighed by the district court. *Id.* This weighing process is within the discretion of the trial judge. *Ford Motor Co. v. Ryan,* 182 F.2d 329, 331 (2d Cir.), *cert. denied,* 340 U.S. 851, 71 S.Ct. 79, 95 L.Ed. 624 (1950).

■ However, "[t]he contractual provision for venue not only negates the deference traditionally accorded to the plaintiff's choice of forum, but weighs in favor of the defendant's position here." *A. C. Miller Concrete Products Corp. v. Quikset Vault Sales Corp.,* 309 F.Supp. 1094, 1095 (E.D.Pa. 1970). While the plaintiff argues that transferring this case to California merely shifts the convenience of the parties from plaintiff to defendant, the fact remains that plaintiff has previously agreed to bring any suit against defendant in California. Plaintiff cannot be heard to complain about inconveniences resulting from an agreement it freely entered into. See *Central Contracting Co. v. Maryland Casualty Co.,* 367 F.2d 341, 344 (3d Cir. 1966).

Any inconveniences to witnesses resulting from a transfer to California appear nebulous. Plaintiff has named seven of defendant's salesmen, five customers and two of its own officers as potential witnesses in this case. All live in or near New York City. Defendant, on the other hand, names four potential witnesses, all of whom live in California. These witnesses are officers of Soft Lenses. Because this is a suit alleging unfair trade practices, the testimony of the policy makers of the defendant company, as well as from the sales force, would be important, and it appears that the credibility of the former would be more likely called into question. See *Saminsky v. Occidental Petroleum Corp.,* 373 F.Supp. 257, 260 (S.D.N.Y.1974). At this point, it is difficult to determine whether a trial in California will seriously inconvenience the major witnesses in this case. Similarly, both sides disagree as to the location of vital documents. Thus, with regard to convenience to witnesses, the Court is unable to find a clear preference for any of the suggested forums.

4. 28 U.S.C. § 1404(a) provides:

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

On the other hand, the Court finds that the interest of justice favors a transfer to California. Defendant in this case has filed suit in the Central District of California against plaintiff for an alleged breach under the same distributorship agreement. While the present case involves antitrust law, it also appears to contain a claim for an alleged breach of the distributorship agreement.[5] Litigating both cases in the same tribunal might well avoid duplicity of effort in interpreting the distributorship agreement and more efficiently serve the ends of justice. See *Wyndham Associates, Inc. v. Bintliff,* 398 F.2d 614 (2d Cir.), *cert. denied,* 393 U.S. 977, 89 S.Ct. 444, 21 L.Ed.2d 438 (1968).

In sum, the Court hereby transfers the within action to the United States District Court for the Central District of California.

SO ORDERED.